IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABRAHAM J. GREGOR, | : | |
|     Plaintiff | : | No. 1:14-cv-00219 |
| | : | |
| v. | : | (Judge Kane) |
| | : | (Magistrate Judge Carlson) |
| | : | |
| OFFICER SCOTT JOHNSEN and | : | |
| THE CITY OF HARRISBURG | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are: the Report and Recommendation of Magistrate Judge Carlson (Doc. No. 75), recommending that the Court grant the motion for summary judgment filed by Defendants Officer Scott Johnsen ("Defendant Johnsen") and the City of Harrisburg, Pennsylvania ("the City") (collectively referred to herein as "Defendants") as to all claims asserted in the above-captioned action; Plaintiff Abraham J. Gregor ("Plaintiff")'s objections to the Report and Recommendation (Doc. No. 76); and Defendants' response to Plaintiff's objections (Doc. No. 79). Based on the following, the Court will overrule Plaintiff's objections to the Report and Recommendation (Doc. No. 76), adopt the Report and Recommendation (Doc. No. 75), and grant Defendants' motion for summary judgment (Doc. No. 67).

## I. BACKGROUND[1]

### A. Procedural Background

Plaintiff initiated the above-captioned action on February 7, 2014 by filing a two-count complaint against Defendants, asserting a Fourteenth Amendment excessive force claim against

---

[1] The Court incorporates the factual account set forth in the background section of Magistrate Judge Carlson's Report and Recommendation. (Doc. No. 75 at 2-4.) To the extent that the Court references evidence not addressed in that portion of Magistrate Judge Carlson's Report and Recommendation, it cites the record directly.

Defendant Johnsen pursuant to 42 U.S.C. §1983 (Count I) and a Fourteenth Amendment excessive force claim against the City pursuant to 42 U.S.C. § 1983 (Count II) relating to a confrontation between Plaintiff and Defendant Johnsen that resulted in Defendant Johnsen shooting Defendant three times. (Doc. No. 1.) On September 29, 2016, the Court referred the above-captioned action to Magistrate Judge Carlson for pretrial management and for issuance of a report and recommendation on pretrial motions. (Doc. No. 57.) On July 21, 2017, Defendants filed a motion for summary judgment. (Doc. No. 67.) After the motion was fully briefed (Doc. Nos. 69, 73, 74), Magistrate Judge Carlson issued the instant Report and Recommendation, in which he recommends granting Defendants' motion for summary judgment and closing the above-captioned action, on November 3, 2017. (Doc. No. 75.) On November 16, 2017, Plaintiff filed his objections to the Report and Recommendation. (Doc. No. 76.) Defendants filed a response to Plaintiff's objections on December 7, 2017. (Doc. No. 79.) Because the time for further briefing has passed, the Report and Recommendation is ripe for disposition.

  **B. Magistrate Judge Carlson's Report and Recommendation**

In his Report and Recommendation, Magistrate Judge Carlson recommends that the Court grant Defendants' motion for summary judgment. (Doc. No. 75.) In arriving at this recommendation, Magistrate Judge Carlson separately addressed the two claims asserted in Plaintiff's complaint. (Id. at 8-23.) First, Magistrate Judge Carlson concluded that Defendant Johnsen is entitled to qualified immunity as to Plaintiff's excessive force claim. (Id. at 8-20.) Magistrate Judge Carlson began his analysis with the second prong of the qualified immunity analysis—whether the constitutional right allegedly violated was clearly established at the time that Defendant Johnsen acted (id. at 10-20)—and concluded that Defendant Johnsen's conduct did not violate any clearly established constitutional right, and, therefore, Defendant Johnsen was

2

entitled to qualified immunity (id. at 20). In reaching that conclusion, Magistrate Judge Carlson first described the relevant law pertaining to the Fourth Amendment right against excessive force. (Id. at 10-14.) He then considered the particular factual circumstances of this case, in which "a police officer fired three shots to protect [] himself from the threat of serious physical injury or death" (id. at 15), and concluded that Defendant Johnson "could have believed, in light of what was in the decided case law, that [his] conduct was lawful" (id. at 15) (internal quotation marks omitted) (quoting Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d Cir. 1994)). Magistrate Judge Carlson distinguished the circumstances of the instant case from those in Lamont v. New Jersey, 637 F.3d 177 (3d Cir. 2011), noting that in the instant case, it is undisputed that Defendant remained armed with a knife throughout the duration of the shooting, whereas in Lamont, "[t]he Third Circuit concluded that the troopers could see that the suspect's hand was empty—and thus that he was unarmed and did not pose a threat to the troopers— almost immediately after the first shots were fired." (Id. at 16-17) (citing Lamont, 637 F.3d at 184). He further distinguished the facts of the two cases by observing that:

> [Defendant] Johnsen fired only 3 shots total with 2 of them striking [Plaintiff] from behind, whereas the state troopers in Lamont fired 39 shots and struck the suspect in the back a total of 11 times[,] [and] [t]he troopers in Lamont also fired for approximately 10 seconds, whereas [Plaintiff] does not posit that a specific amount of time elapsed between [Defendant] Johnsen's first and third shots[,] although it is apparent that these shots were fired in a rapid succession."

(Id. at 17.) Magistrate Judge Carlson found that the factual circumstances in the instant case are much more similar to those in cases in which courts have found that the officer-defendants were entitled to qualified immunity. (Id. at 18-19) (citing Plumhoff v. Rickard, 572 U.S. 765, 777 (2014); Untalan v. City of Lorain, 430 F.3d 312, 315 (6th Cir. 2005); Mullins v. Cyranek, 805 F.3d 760, 768 (6th Cir. 2015)). Accordingly, Magistrate Judge Carlson concluded "that a

3

reasonable officer in [Defendant] Johnsen's position would not have known beyond debate that firing those second and third shots would have constituted excessive force." (Id. at 19) (citing Plumhoff, 572 U.S. at 777-78; Lamont, 637 F.3d at 183). Magistrate Judge Carlson found that "although [Plaintiff] claims that some facts remain in dispute, he has failed to produce any evidence to establish that [Defendant] Johnsen could not reasonably have believed that his use of force was permissible under the circumstances." (Id.) In addition, Magistrate Judge Carlson rejected Plaintiff's invocation of allegedly inconsistent statements made by Dr. Wayne Ross—Defendants' former expert—and Defendant Johnsen, concluding that "[t]o the extent that some inconsistencies may remain between the previous statements made by [Defendant] Johnsen and Dr. Ross and [] [D]efendants' current narrative, Plaintiff fails to create anything more than 'some metaphysical doubt,' which is insufficient to preclude summary judgment." (Id. at 18 n.3) (citing Scott v. Harris, 550 U.S. 372, 380 (2007); Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 92 (D.N.J. 2007)).

Next, Magistrate Judge Carlson concluded that summary judgment should be granted in favor of the City in regard to Defendant's Monell claim because there was no evidence presented that the City had adopted a policy or custom that caused the alleged constitutional violation. (Id. at 20-23.) Magistrate Judge Carlson explained that although Defendant cites the City's after-the-fact failure to discipline Defendant Johnsen in support of this claim, such conduct is not sufficient evidence to establish that the City caused the alleged constitutional wrongdoing. (Id. at 21-23.)

4

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to a Motion for Summary Judgment

Federal Rule of Civil Procedure 56 governs the grant of summary judgment. Parties may move for summary judgment on particular claims or defenses, or on a part of each claim or defense. See Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (internal quotation marks omitted) (quoting Lamont, 637 F.3d at 181 (3d Cir. 2011)).

In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." See Fed. R. Civ. P. 56(c)(1)(A). "The non-moving party cannot rest on mere pleadings or allegations," El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial," Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). The Court "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and will grant the motion only "if no reasonable juror could find for the non-movant." See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).

### B. Standard of Review Applicable to this Court's Review of the Report and Recommendation

The Magistrate Act, 28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b) provide that any party may file written objections to a magistrate judge's proposed findings and recommendations. In deciding whether to accept, reject, or modify the Report and Recommendation, the Court is to make a de novo determination of those portions of the Report and Recommendation to which an objection is made. See 28 U.S.C. § 636(b)(1); M.D. Pa. L.R. 72.3.

## III. DISCUSSION

### A. Applicable Legal Standards

#### 1. Legal Standard Applicable to a Fourth Amendment Excessive Force Claim

"To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." Lamont, 637 F.3d at 182-83 (citing Brower v. Cty. of Inyo, 489 U.S. 593, 599 (1989); Graham v. Connor, 490 U.S. 386, 395-96 (1989)). "It is unreasonable for an officer to use deadly force against a suspect unless the officer has good reason 'to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" Id. at 183 (citing Tennessee v. Garner, 471 U.S. 1, 3 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. "Thus, '[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene'; Monday morning quarterbacking is not allowed." Lamont, 637 F.3d at 183 (quoting Graham, 490 U.S. at 396).

## 2. Legal Standard Applicable to a Qualified Immunity Analysis

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, __U.S. __ (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). That means that "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, __ US __ (2017), clarifies the Court's inquiry in this regard. In that case, the Supreme Court reaffirmed that its precedent "do[es] not require a case directly on point" for a right to be clearly established, but, rather, "existing precedent must have placed the statutory or constitutional question beyond debate." [2]

---

[2] There may be the rare "obvious case," however, where "a body of case law" is not necessary. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

See id. (internal quotation marks omitted) (quoting Mullenix v. Luna, __ U.S. __ (2015)). The Supreme Court reiterated that the clearly established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right. See id. The Supreme Court has emphasized that "the 'specificity' of the rule is 'especially important in the Fourth Amendment context.'" See Wesby, __ U.S. at __ (quoting Mullenix, __ U.S. at __).

### B. Parties' Arguments

#### 1. Plaintiff's Objections to the Report and Recommendation

Plaintiff objects to the Report and Recommendation on the basis that Magistrate Judge Carlson improperly "resolved all reasonable inferences in favor of [Defendant Johnsen]" in contravention of the summary judgment standard.[3] (Doc. No. 76 at 2-10.) Plaintiff argues that in order to determine whether his excessive force claim against Defendant Johnsen succeeds, it must first be determined "(1) whether the second and third bullets fired by [] Defendant [Johnsen] are each 'independently justified,' and (2) whether or not when the bullets in question were fired the threat had already abated," and that because the facts in regard to those inquiries are disputed, summary judgment is not appropriate. (Id. at 4.) Plaintiff argues that based on the evidence, there are four versions of events of the encounter between Plaintiff and Defendant Johnsen: Plaintiff's version, Defendant Johnsen's version, Dr. Ross's version; and Defendants' experts Steve Ijames ("Ijames") and Frederick Wetling ("Wetling")'s version.[4] (Id. at 4-5.)

---

[3] Plaintiff does not object to Magistrate Judge Carlson's recommendation that the Court grant summary judgment in favor of the City as to Plaintiff's Monell claim. (Doc. No. 76 at 1.)

[4] Plaintiff summarizes those four versions of events as follows:

8

Plaintiff argues that summary judgment is inappropriate because his version of events—
"that he was shot while standing and facing [] Defendant [Johnsen], and that upon realizing that
he was shot, he turned away from [] Defendant [Johnsen], and was shot two more times directly
in the back"—directly conflicts with Defendant Johnsen's statements indicating "that Plaintiff
never turned his back, but instead continued to advance on [Defendant Johnsen's] position, while
armed, at which time [Defendant Johnsen] rapidly fired three bullets." (Id. at 5-6.) Plaintiff
asserts that "Magistrate Judge Carlson goes so far as to decide some of the disputed facts,
without a jury, in favor of [] Defendant [Johnsen]." (Id. at 6.) Plaintiff argues that the fact that
he has asserted that he recognized that he had been struck by the first bullet before the second
and third shots hit him is sufficient evidence to call into question whether Defendant Johnsen
comprehended that Plaintiff was struck by the first bullet before firing the second and third shots,

---

(1) <u>Plaintiff's version</u>: Plaintiff testified that he was shot, thought about the fact that he had been shot, turned away from Defendant Johnsen, and then Defendant Johnsen shot him two more times directly in the back.

(2) <u>Defendant Johnsen's version</u>: Plaintiff ignored repeated commands to drop the knife and continued to advance on his position. [] Defendant [Johnsen] fired three bullets at [] Plaintiff, who only stopped advancing after the third bullet was fired. Plaintiff never turned away from Defendant Johnsen.

(3<u>) Dr. Wayne Ross' version</u>: The impact from the first bullet fired by Defendant Johnsen caused Plaintiff's body to spin 180 degrees, which permitted the second and third bullets to strike Plaintiff in the back.

(4) <u>Steve Ijames and Frederick Wetling's version</u>: After hearing and processing the fact that the first bullet had been fired, Plaintiff began to turn away from Defendant Johnsen, but timed his turn perfectly, i.e., to start after bullet one impacted (while bullets two and three were still airborne), and to be completed before bullets two and three impacted.

(Id. at 4-5) (internal citations omitted).

which Plaintiff deems a material fact. (Id. at 7.) Plaintiff also argues that Magistrate Judge Carlson incorrectly stated that Plaintiff does not provide an estimate of how long it took him to process that he had been struck by the first bullet or speak generally of any delay between the first and second bullets; Plaintiff contends that if he had time to process that he had been shot and turn in response, it is reasonable to infer that Defendant Johnsen was also able to process that he had hit Plaintiff and act on that realization. (Id.)

Plaintiff next asserts that Magistrate Judge Carlson incorrectly concluded that Plaintiff "fail[ed] to provide any evidence to contradict the statements from [] [D]efendants' experts that an individual can turn around in approximately 0.5 seconds and that [Defendant] Johnsen is capable of firing 3 bullets within the span of approximately 1.57 seconds." (Id. at 8) (internal quotation marks and citation omitted). Plaintiff also contends that his ballistics expert, David Balash, considered Defendants' data highly suspect based on his own experience and the fact that Defendant Johnsen participated in the testing that is the basis for the data. (Id.) Plaintiff also notes that Balash disputed Ijames and Wetling's theory and "testified that considering the short distance involved, and the speed of the bullets when fired, all of the shots would have impacted Plaintiff before he would have even realized that a single bullet had even been fired." (Id.) Plaintiff contends that it is reasonable to infer, based on Balash's testimony, "that when multiple bullets are rapidly fired, it is impossible to turn around between bullet one impacting and bullet two impacting." (Id.) Plaintiff also challenged Magistrate Judge Carlson's reliance on Scott to dismiss the materiality of Defendant Johnsen's allegedly inconsistent statements, arguing that Scott "held that self-serving testimony that directly contradicts video evidence, which cannot be credibly disputed, cannot serve to create a dispute of fact sufficient to defeat summary judgment," and that no such video evidence exists in this case. (Id. at 9) (citing Scott,

10

550 U.S. at 380). Plaintiff concludes his objections by asserting that because "[a] jury could reasonably conclude that bullets two and three were excessive[] and violated Plaintiff's Fourth Amendment rights," a jury must resolve the factual disputes before the immunity issue can be decided. (Id. at 9-10) (citing Estate of Fuentes ex rel. Fuentes v. Thomas, 107 F. Supp. 2d 1288, 1300 (D. Kan. 2000), aff'd, 30 F. App'x 931 (10th Cir. 2002); Nolan v. Grim, No. 5:09-cv-39, 2010 WL 4929658, at *9 (W.D. Va. Nov. 30, 2010)).

### 2. Defendants' Response to Plaintiff's Objections

Defendants reject each of the bases of Plaintiff's objections to the Report and Recommendation. (Doc. No. 79.) First, they contend that Plaintiff concedes that Defendant Johnsen shot him because he reasonably feared for his life. (Id. at 5-6.) Second, Defendants assert there is no factual dispute as to whether Defendant Johnsen fired the three shots in rapid succession, citing various pieces of evidence that allegedly support such a conclusion and arguing that "Plaintiff asks this Court to doubt what he cannot dispute." (Id. at 6-7.) Defendants argue that "Plaintiff must present actual evidence to contradict [Defendant] Johnsen's testimony," (id. at 7) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)), and that "Plaintiff's inconclusive statement [regarding the timing of the three shots] does not dispute [Defendant] Johnsen's testimony that he fired the shots in rapid succession" (id.) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986)). Defendants further argue that while Plaintiff testified that he realized he had been struck by the first bullet and turned, this testimony includes no reference to how much time passed between the shots and does not contradict Defendant Johnsen's testimony that he fired the three shots in rapid succession. (Id. at 7-8.) Defendants contend that "Plaintiff wants this Court to assume a time gap that he can't testify to or present any other evidence to show." (Id. at 9.)

11

Third, Defendants argue that although Plaintiff has framed the material issue before the Court as whether Defendant Johnsen knew that he struck Plaintiff with the first shot when he fired the subsequent shots, the key issue is, in actuality, whether Defendant Johnsen knew that Plaintiff turned away from him before firing the second and third shots, and no evidence supports such a conclusion that he did. (Id. at 9-10.) Defendants argue that pursuant to Plumhoff, "[a]s long as Plaintiff faced [Defendant] Johnsen with a knife in hand, [Defendant] Johnsen was allowed to continue shooting," and, therefore, in order to defeat summary judgment, "Plaintiff must present evidence of a time gap after he turned." (Id.) (citing Plumhoff, 572 U.S. at 777-78).

Fourth, Defendants allege that Plaintiff waived his argument that Defendant Johnsen's 2012 statements conflict with his deposition testimony by failing to "explain how or why the alleged contradictions are material" and refer to specific statements inconsistent with Defendant Johnsen's testimony that he fired the shots in rapid succession. (Id. at 10-11.) Defendants argue that even if this argument were not waived, Plaintiff mischaracterized Defendant Johnsen's testimony "to create the false impression that [Defendant] Johnsen did not fire bullets in rapid succession as one decision." (Id. at 11.) Further, Defendants explain why the statements cited in Plaintiff's earlier brief are not inconsistent and fail to place any material facts into dispute.[5] (Id. at 11-14.) Defendants argue that although Plaintiff asserts that Defendant Johnsen stated that "each bullet was fired only because Plaintiff ignored commands to drop the knife while continuing to advance his position" (id. at 11) (internal quotation marks and citation omitted), Defendant Johnsen "has never testified to making any statements to Plaintiff after he fired the first shot[] but has consistently testified that he fired the shots collectively as one decision

---

[5] Defendants also assert that Defendant Johnsen's investigative interview is inadmissible for summary judgment purposes "because it is neither sworn nor verified subject to penalties of perjury." (Doc. No. 79 at 12) (citing Adickes v. S.H. Kress, 398 U.S. 144, 158 n.17 (1970); Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 323 (3d Cir. 2005)).

because he feared for his life" (id.). Defendants also address Plaintiff's critique of Magistrate Judge Carlson's citation of Scott, arguing that Magistrate Judge Carlson cited Scott generally for purposes of articulating the standard of review applicable to a motion for summary judgment. (Id. at 12-13.) Finally, Defendants argue that immaterial inconsistencies in Defendant's Johnsen's statements do not establish a material dispute of fact and note that Defendant has failed to respond to that proposition. (Id. at 13.)

Fifth, Defendants argue that Plaintiff does not dispute Defendant Johnsen's fear for his life, and no evidence refutes Defendant Johnsen's statement "that he fired all three shots in quick succession while he still feared Plaintiff's imminent, deadly attack." (Id. at 14.) Defendants also argue that Plaintiff failed to address any of the cases "that justify shots fired moments after a threat dissipates" and that Magistrate Judge Carlson found to be closely congruent to this case. (Id. at 14-15) (citing Mullins, 805 F.3d at 767; Untalan, 430 F.3d at 315). Defendants assert that Plaintiff's contention that "[Defendant] Johnsen must account for each and every individual shot fired to pass constitutional muster" is inconsistent with Third Circuit and Supreme Court precedent and, if applied, would have serious negative policy implications. (Id. at 15-16.) Defendants compare the circumstances Defendant Johnsen faced to those in Plumhoff, Untalan, and Mullins, and assert that, consistent with those cases, Defendant Johnsen's actions during the momentary incident were justified because Defendant Johnsen "fired the shots under an undisputed perception of fear that Plaintiff intentionally created by threatening the officer with a knife." (Id. at 16-17.) Defendants assert that Magistrate Judge Carlson correctly concluded "that all three shots fired in quick succession were justified because the facts—even viewed in the light most favorable to Plaintiff—do not show that Johnsen shot Plaintiff after Johnsen knew the threat had ceased." (Id. at 18.) Defendants argue that "[a]sking this Court to parse this split

13

second decision is exactly the kind of Monday morning quarterbacking that the Supreme Court forbade" in Graham, 490 U.S. at 396-97. (Doc. No. 79 at 18-19.) Defendants distinguish Lamont from the instant case by first noting that in Lamont, the victim was dead and, therefore, unable to testify, which meant that the court applied a more skeptical summary judgment standard toward the testimony of the officers. (Id. at 17.) Defendants argue that no such standard should be applied to the instant case, where Plaintiff was able to testify but did not testify to a significant time gap between the shots. (Id.) Defendants further distinguish the two cases by noting that the Third Circuit found the high number of shots that hit the decedent in Lamont significant and "specifically found that a 'small number of bullets' from behind is consistent with a suspect quickly turning as the shots are fired." (Id. at 19-20.) They also note that in Lamont, the defendant-troopers saw that the decedent's hand was empty immediately after they began firing but continued to fire for roughly ten seconds, whereas, in the instant case, Defendant Johnsen fired three shots in rapid succession, and the knife remained in Plaintiff's hand throughout the incident. (Id. at 19.) Defendants argue that Lytle v. Bexar County, 560 F.3d 404 (5th Cir. 2009), which the Third Circuit cited in Lamont, supports Defendant Johnsen's entitlement to summary judgment because in that case, the Court of Appeals held that "shots fired 'immediately' or an 'extremely brief period of time' after a threat ends" are justified "because the officer must be allowed time 'to perceive new information indicating the threat was past.'" (Id. at 20) (quoting Lytle, 560 F.3d at 413-14).

Sixth, Defendants argue that because issues raised for the first time in objections to a report and recommendation are deemed waived, Plaintiff waived his argument that Balash's testimony "creates a factual dispute as to whether [Defendant] Johnsen fired the shots in rapid succession" by asserting it for the first time in his objections to the Report and Recommendation.

14

(Id. at 21-22.) Defendants contend that even if that argument were not waived, Balash's testimony does not create a dispute of material fact. (Id. at 22-27.) They argue that Balash has admitted that he is not an expert on perception or reaction time, and his conjecture regarding Defendant Johnsen's shooting speed and the time it would take Plaintiff to turn are, accordingly, inadmissible as expert testimony. (Id. at 23.) Defendants also assert that Balash's testimony should be disregarded because Balash "goes so far as to argue that witness identifications can't be trusted." (Id.) Defendants further argue that Balash does not dispute that Defendant Johnsen fired all three shots in rapid succession and only "speculates that 'rapid' can mean different things to people unfamiliar with firearms . . . [but could not] think of a single example of someone misunderstanding the word." (Id. at 24.) Defendants also assert that witness Kelsey Connell was clear that she heard the sound of the shots in rapid succession. (Id. at 24-25.) Defendants also dismiss Balash's "vague question[ing]" of Defendant's average shooting time as lacking any basis other than Balash's "personal experience" and note that Balash has admitted to witnessing the same time in other three-shot shooting tests and was unaware of any literature that disputes the plausibility of Defendant Johnsen's shooting speed.[6] (Id. at 25.)

Finally, Defendants assert that Plaintiff has failed to cite any clearly established law that Defendant Johnsen violated. (Id. at 27-29.) To that end, Defendants contend that even if the Court disagrees with the relevant decisions addressing the law on this issue, Plaintiff is entitled to qualified immunity because "[i]f judges thus disagree on a constitutional question, it is unfair

---

[6] Defendants also discount Balash's reference to a competitive shooter who fired six rounds per second as irrelevant to Defendant Johnsen's shooting speed. (Doc. No. 79 at 25.) Defendants further argue that Balash's testimony fails to dispute that Plaintiff could turn in half of a second. (Id. at 26.) In addition, Defendants discount Plaintiff's invocation of Balash's testimony that Balash "was unaware of similar situations where a bullet struck someone in the back even though the officer fired while he still perceived a threat," asserting that the unusual nature of a fact pattern does not make it untrue. (Id.)

15

to subject police to money damages for picking the losing side of the controversy." (Doc. No. 79 at 27) (internal quotation marks omitted) (citing Reichle v. Howards, 566 U.S. 658, 669-70 (2012)). Defendants further argue that the only precedent cited by Plaintiff, Lamont, is highly distinguishable from the instant case. (Id. at 28.) Defendants contend that even under Plaintiff's "bullet-by-bullet dissection" of the incident, Defendant Johnsen is entitled to qualified immunity. (Id. at 29.)

### C. Whether the Court Should Adopt the Report and Recommendation

The Court finds that Magistrate Judge Carlson correctly and comprehensively addressed the pending motion for summary judgment in his Report and Recommendation and correctly concluded that Defendant Johnsen is entitled to qualified immunity and summary judgment in regard to Plaintiff's Fourth Amendment excessive force claim and that the City is entitled to summary judgment in regard to Plaintiff's Monell claim. Accordingly, the Court will overrule Plaintiff's objections, adopt the Report and Recommendation, and grant Defendants' motion for summary judgment as to both claims asserted in Plaintiff's complaint. Although the Report and Recommendation addresses the substance of most of Plaintiff's objections, the Court addresses each of the bases of Plaintiff's objections to the Report and Recommendation in turn. Plaintiff broadly asserts that Magistrate Judge Carlson improperly resolved all reasonable inferences in favor of Defendant Johnsen and against Plaintiff but follows this general objection with a myriad of specific objections. (Doc. No. 76 at 2-10.) Plaintiff's first objection stems from his contention that because the facts of the case must be established in order to determine "(1) whether the second and third bullets fired by [] Defendant [Johnsen] are each 'independently justified,' and (2) whether or not when the bullets in question were fired the threat had already abated," summary judgment must be denied because there are four versions of events, and,

16

therefore, a jury must determine the facts. (Id. at 4.) The Court is unpersuaded by this objection. Although the Court addresses the specific alleged inconsistencies cited by Plaintiff infra, it finds broadly that none of the evidence underlying the four versions of events that Plaintiff describes creates a genuine issue of material fact, and, therefore, summary judgment is appropriate. See Fed. R. Civ. P. 56(a); see also Hatch v. Franklin Cty. Jail, No. 14-cv-2318, 2017 WL 6397830, at *7 ("A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis for allowing a reasonable factfinder to return a verdict for the non–moving party." (citing Anderson , 477 U.S. at 248-49)).

Plaintiff next asserts that because Defendant Johnsen's statements "directly conflict" with Plaintiff's version of events and the medical evidence, summary judgment should be denied. (Doc. No. 76 at 5.) To the extent that Defendant relies on his testimony that he realized that he had been hit by the first shot before he turned and was struck by the second and third shots (Doc. No. 76 at 5), the Court finds that Magistrate Judge Carlson correctly concluded that such testimony "[does] not contradict [Defendant] Johnsen's proffered timeline or his statement that all three shots were fired in quick succession" (Doc. No. 75 at 17 n.2). In order for Plaintiff to establish an issue of material fact, he must cite specific evidence that creates a genuine issue for trial. See Matsushita, 475 U.S. at 587. Here, Plaintiff's testimony is simply not inconsistent with the material aspects of Defendant Johnsen's testimony, namely that when Plaintiff, holding a knife, turned to face him, Defendant Johnsen feared for his life and fired three shots in rapid succession at Plaintiff (Doc. Nos. 68-10 at 17: 2, 18: 3-12, 75 at 15).

The Court is also unpersuaded that the expert reports of Dr. Ross and Ijames and Wetling create a material factual issue that precludes summary judgment because Magistrate Judge Carlson accepted Plaintiff's contention that he turned after he was struck by the first bullet.

17

(Doc. No. 75 at 17 n.1.) The Court also finds that because Plaintiff raises his arguments regarding the creation of a factual dispute by Balash's testimony as to whether Defendant Johnsen fired the shots in rapid succession for the first time in his objections to the Report and Recommendation, those arguments have been waived.[7] See Jacobs v. Usner, No. 08-cv-470, 2016 WL 4803917, at *1 (W.D. Pa. Sept. 16, 2016) ("Issues raised for the first time in objections to the magistrate judge's report and recommendation are deemed waived." (internal quotation marks omitted) (quoting Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996))). As to the other alleged factual disputes created by Balash's testimony (Doc. No. 76 at 8-9), the Court concludes that the relevant testimony fails to establish any genuine issue of material fact.

Finally, the Court is also unpersuaded by Plaintiff's assertion that Magistrate Judge Carlson incorrectly relied on Scott to dismiss Defendant Johnsen's allegedly inconsistent statements (Doc. No. 76 at 9). The Court agrees with Defendants' assertion that Magistrate Judge Carlson cited Scott for purposes of explaining the summary judgment standard. (Doc. No. 79 at 12-13.) Moreover, Magistrate Judge Carlson correctly concluded that any inconsistencies in Defendant Johnsen's statements failed to establish a genuine issue of material fact to preclude summary judgment. See Sarmiento, 513 F. Supp. 2d at 92 (citing Tomasso v. Boeing, Co., 445 F.3d 702, 706 (3d Cir. 2006); Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)).

## IV. CONCLUSION

Based on the foregoing, the Court will overrule Plaintiff's objections to the Report and Recommendation (Doc. No. 76), adopt Magistrate Judge Carlson's Report and Recommendation (Doc. No. 75), and grant Defendants' motion for summary judgment in its entirety (Doc. No. 67). An appropriate Order follows.

---

[7] Even if these arguments were properly raised, however, the Court is unpersuaded that any portion of Balash's testimony creates a genuine issue of material fact.